**SIGNED THIS: September 17, 2015**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 14-71331 |
| PATRICIA A. CURRIE, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

# O P I N I O N

The Debtor's First Amended Chapter 13 Plan is before the Court for confirmation. The Chapter 13 Trustee has objected to confirmation, asserting that because the Debtor is not proposing to pay her unsecured creditors in full, she must devote all disposable income she expects to receive during the plan term to the payment of her unsecured creditors. The Chapter 13 Trustee claims that the Debtor has miscalculated her disposable income because she has taken a deduction in her calculation for a housing allowance to which she is not entitled.

Both the Debtor and the United States Trustee argue, to the contrary, that the Debtor is entitled to the housing deduction included in her disposable income calculation. Because this Court finds that the Debtor is entitled to the deduction, the Trustee's objection to confirmation will be overruled.

## I. Factual and Procedural Background

Patricia A. Currie ("Debtor") filed her voluntary petition under Chapter 13 on July 22, 2014. On her Schedule A - Real Property, she disclosed ownership of a modest home in which she resides in Decatur, Illinois, valued at $16,000. On her Schedule J - Expenses, she listed monthly expenses related to her home of $48.33 for insurance, $50 for maintenance and repairs, and a combined $252 for electricity, heat, natural gas, water, sewer, and garbage. The Debtor has no mortgage indebtedness associated with her home.

On her initial Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("B22C"), the Debtor deducted $437 at line 25A for Local Standards: Housing and Utilities; non-mortgage expense. She also deducted $651 on line 25B for Local Standards: Housing and Utilities; mortgage/rent expense. The Debtor's disposable income shown on line 59 of her B22C was negative $146.85.

The Debtor's initial Chapter 13 Plan ("Plan") proposed that she would make $176 per month payments for sixty months for a total of $10,560. From that amount, the Chapter 13 Trustee ("Trustee") was directed to pay his own commission, fees to the Debtor's attorney of $2929, and a priority claim of the

Internal Revenue Service ("IRS") in the amount of $6451. The Plan provided that any funds remaining after the specifically identified payments were made should be distributed to unsecured creditors *pro rata*.

The IRS objected to the Plan asserting that its priority claim should be paid in the amount of $11,133.87 rather than the lower sum suggested by the Debtor. Although the Debtor initially objected to the IRS's claim, she later withdrew the objection and filed an Amended Plan. In her Amended Plan, the Debtor proposed payments of $176 for four months and $267 for an additional fifty-six months for a total of $15,656. The Amended Plan increased the proposed distribution to the IRS to $11,133.87 but in other respects is virtually identical to the original Plan.

After the Amended Plan was filed, the Trustee filed an objection to the Debtor's B22C. The Trustee claimed that the Debtor had improperly deducted the $651 Local Standard for mortgage/rent expense and he asserted that she was not entitled to the deduction because she had no mortgage indebtedness related to her home. The Trustee also asserted that there were other errors on the B22C—some of which, if corrected, would actually work to the Debtor's benefit—and calculated that the Debtor's monthly disposable income was actually $572.95 rather than the negative $146.85 she had calculated. The Trustee also filed an objection to confirmation of the Amended Plan and, relying on his objection to the B22C, argued that confirmation should be denied because the Debtor was not committing all of her projected disposable income to the payment of her unsecured creditors.

The Debtor subsequently filed an Amended Schedule J adding a $50.33 per

month expense for real estate taxes and reducing her combined utilities to $234 per month. The Debtor's expenses for insurance and repairs and maintenance remained the same. The Debtor also filed an Amended B22C incorporating some of the changes suggested by the Trustee but continuing to claim the $651 mortgage/rent deduction.[1] On her Amended B22C, the Debtor calculated her disposable income as negative $78.05.

At an initial hearing, the parties agreed that the issue of applicability of the mortgage/rent deduction was a legal issue and a briefing schedule was set. After the initial briefs were filed, this Court decided that further briefing would be helpful on the issue of whether the division of the IRS Local Standard for Housing and Utilities on the B22C form into two subcategories when the IRS Local Standard itself makes no such division was consistent with the Code. The Debtor had raised the issue in her final brief but the Trustee had not fully addressed the issue in his brief. In an order requesting supplemental briefing, the Court invited the United States Trustee ("UST") to participate in addressing the pending issues.

The UST filed a brief on the issue joining the Debtor in arguing that the

---

[1] For her amendments, the Debtor actually filed forms 22C-1 and 22C-2, the new Official Forms which became effective December 2014. Although there are differences in the new forms from the initial B22C form filed by the Debtor, the use of the updated forms does not change the Court's decision here. Also, the Debtor actually deducted the $50.33 for her real estate taxes on line 33a of the 22C-2 form as a secured debt payment and then set that amount off from the $651 "mortgage/rent" expense at line 9b for a net deduction of $600.67 at line 9c. Although real estate taxes may be a lien on the Debtor's property, the better practice would have been to have taken the full deduction at line 9a and 9c and no deduction at line 33a. Either way, the total deduction taken by the Debtor for housing expenses would remain the same.

mortgage/rent deduction was properly taken by the Debtor on her B22C. The Trustee filed a supplemental brief maintaining that the deduction should not be allowed. The issue is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred by the District Court to the bankruptcy judges. CDIL-LR 4.1; 28 U.S.C. §157(a). Determination of whether a plan should be confirmed is a core proceeding. 28 U.S.C. §157(b)(2)(L). The issue of plan confirmation also "stems from the bankruptcy itself" and arises specifically under the provisions of the Code and therefore may be constitutionally decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

## III. Legal Analysis

Generally, if an objection has been filed, a Chapter 13 plan must provide for contribution of all of a debtor's projected disposable income for the applicable commitment period to the payment of unsecured creditors. *See* 11 U.S.C. §1325(b)(1)(B). The term "disposable income" is defined, in part, as a debtor's current monthly income "less amounts reasonably necessary to be expended" for the current maintenance and support of the debtor and the debtor's dependents. 11 U.S.C. §1325(b)(2)(A)(i). For above-median income debtors, the "amounts reasonably necessary to be expended" are "determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. §1325(b)(3). There is

-5-

apparently no dispute here that the Debtor has above-median income and is subject to the statutory formula for calculation of her allowable expenses.

The provisions of §707(b) are commonly known as the "means test" and are also used to determine a debtor's eligibility for Chapter 7 relief. Section 707(b)(2)(A)(ii) provides, in part:

> (ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of a debtor in a joint case, if the spouse is not otherwise a dependent. . . . Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

11 U.S.C. §707(b)(2)(A)(ii)(I).

According to the IRS's website, the Local Standards: Housing and Utilities are derived from data from the U.S. Census Bureau to create a single standard deduction for individuals, based on their county of residence and household size. IRS COLLECTION FINANCIAL STANDARDS, http://www.irs.gov/Individuals/Collection-Financial-Standards (last visited Sept. 15, 2015). Taking the Debtor's circumstances here as an example, the allowance for housing and utilities for a household of one in Macon County, Illinois, at the time of the case filing was $1088. ILLINOIS - LOCAL STANDARDS: HOUSING AND UTILITIES, http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Illinois-Local-Standards-Housing-and-Utilities (last visited Sept. 15, 2015). According to the IRS, the Local Standards: Housing and Utilities "include mortgage or rent, property taxes,

interest, insurance, maintenance, repairs, gas, electric, water, heating oil, garbage collection, residential telephone service, cell phone service, cable television, and internet service." IRS COLLECTION FINANCIAL STANDARDS, http://www.irs.gov/Individuals/Collection-Financial-Standards (last visited Sept. 15, 2015).

Notwithstanding the IRS's issuance of one Local Standard for Housing and Utilities, the Official Forms required for calculating a Chapter 13 debtor's disposable income draw a distinction between mortgage/rent expenses and other housing related expenses. The B22C, completed by the Debtor at the time she filed her petition, separates Local Standards: Housing and Utilities into "non-mortgage expenses" on line 25A and a "mortgage/rent expense" on line 25B. Official Form 22C-2, implemented later in 2014 and completed by the Debtor in amending her disposable income calculation, separates the Local Standard: Housing and Utilities into "Insurance and operating expenses" on line 8 and "Mortgage or rent expenses" on line 9. Neither form provides an explanation of the specific expenses intended to be included on each line, but both forms refer debtors to the U.S. Trustee Program's website for more information.

In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress expressly acknowledged the authority of the Secretary of the Treasury to "alter the [IRS] standards established to set guidelines for repayment plans as needed to accommodate their use under Section 707(b)[.]" BAPCPA, Pub. L. No. 109-8, 119 Stat. 23, at §103. The Trustee claims that the Secretary of the Treasury made the division of the Local Standards: Housing and Utilities into the two separate line-items at issue here. The historical record regarding the creation

of the initial B22C form and the breakdown of housing expenses into two line-items does not, however, support the Trustee's position.

According to the minutes of the August 2005 meeting of the Judicial Conference Advisory Committee on Bankruptcy Rules ("Rules Committee"), concern existed that use of the IRS Local Standards did not adequately address the treatment of a debtor's secured debt for the Chapter 7 means test and Chapter 13 disposable income calculations required by the Code. Advisory Committee on Bankruptcy Rules, August 2005 Meeting Minutes, p. 7-8, http://www.uscourts.gov/rules-policies/archives/meeting-minutes/advisory-committee-rules-bankruptcy-procedure-august-2005 (last visited Sept. 15, 2015).

Because the Code also allows the deduction of secured debt payments associated with real estate in the calculations, concern was expressed that debtors would get a double dip by deducting both a full Local Standard and a mortgage payment. *Id.*; 11 U.S.C. §707(b)(2)(A)(ii). The proposed work-around for that problem was a requirement that any secured debt payment associated with housing be deducted from the Local Standard resulting in a debtor then receiving a deduction for only the greater of the Local Standard or the mortgage payment. But if a debtor had a mortgage payment greater than the amount of the Local Standard, no amount of the Local Standard would remain available for the payment of utilities, maintenance, and other such expenses after subtracting the debt payment. Thus, as a practical matter, the drafters of the initial B22C thought it prudent to mitigate the effect of deducting the mortgage payment from the Local Standard by dividing the Local Standard into two separate line-items. By

-8-

allocating some amount of the Local Standard specifically for utilities, maintenance, and the like, a debtor was assured of receiving a deduction for those expenses regardless of the amount of the mortgage payment. Because the IRS had not separated ownership costs from other housing expenses, however, the Rules Committee itself drafted and circulated alternate versions of the initially proposed form B22C to separate housing expenses into two distinct line-items. *Id.*

At a September 2005 meeting of the Rules Committee, a representative of the Executive Office of the United States Trustees ("EOUST") reported that the IRS had separated the Local Standards for housing and utilities for bankruptcy purposes, dividing the standard into "mortgage/rent expenses" and "non-mortgage expenses." Advisory Committee on Bankruptcy Rules, September 2005 Meeting Minutes, p. 4, http://www.uscourts.gov/rules-policies/archives/meeting-minutes/advisory-committee-rules-bankruptcy-procedure-September-2005 (last visited Sept. 15, 2015). According to the record of that meeting, however, "[t]he IRS ha[d] declined to post the separate standards on its own website . . . but the standards [would] be posted on the EOUST website." *Id.* Notwithstanding the report from the EOUST, it appears that neither the Secretary of the Treasury nor the IRS formally modified the Local Standards: Housing And Utilities. Rather, the record suggests the EOUST was provided with information about the expenses included in the Local Standards in order for the EOUST and the Rules Committee to make their desired practical modification to the B22C.

The IRS has never differentiated between mortgage and non-mortgage expenses in the Local Standards: Housing and Utilities, but at all times has

provided a single amount that is inclusive of all housing expenses and dependent only upon a debtor's county of residence and household size. The IRS website does provide a disclaimer, however, stating that the information provided is intended for tax purposes and that "[e]xpense information for use in bankruptcy calculations can be found on the website for the U.S. Trustee Program." ILLINOIS - LOCAL STANDARDS: HOUSING AND UTILITIES, http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Illinois- Local-Standards-Housing-and-Utilities (last visited Sept. 15, 2015). And the new form 22C-2—breaking down the housing and utilities standards into categories albeit using different terminology than previously used on the B22C—states that "[b]ased on information from the IRS, *the U.S. Trustee Program has divided* the IRS Local Standard for housing for bankruptcy purposes into two parts" (emphasis added), identifying them as "Insurance and operating expenses" and "Mortgage or rent expenses." Official Form B 22C-2.

This clear acknowledgment of the role of the EOUST in the breakdown of the line-items undercuts the Trustee's assertion that it was the Secretary of the Treasury who formally modified the Local Standards. The historical record makes clear that it was the EOUST and the Rules Committee that modified the B22C and separated the Local Standards: Housing and Utilities into two line-items. Most importantly, the record demonstrates that none of those involved in the creation of the two lines items, regardless of the role they played, acted with the intent that any portion of the Local Standards: Housing and Utilities would be disallowed for any debtor with housing expenses. To the contrary, the only expressed intent was

to make sure that the use of the Local Standard by debtors was properly coordinated with the additional allowed deduction for secured mortgage debt.

The Official Bankruptcy Forms and the Federal Rules of Bankruptcy Procedure are intended to govern procedures in cases under the Code, and they enjoy a presumption of validity. *See* Fed. R. Bankr. P. 1001; *In re Trimarchi*, 421 B.R. 914, 920 (Bankr. N.D. Ill. 2010). But as the UST points out, "forms, rules, treatise excerpts, and policy considerations . . . must be read in light of the Bankruptcy Code provisions that govern [a] case, and must yield to those provisions in the event of a conflict." *Schwab v. Reilly*, 560 U.S. 770, 779 n.5 (2010); *see also In re Weigand*, 386 B.R. 238, 241 (B.A.P. 9th Cir. 2008) ("[W]hen an Official Bankruptcy Form conflicts with the Code, the Code always wins."); Fed. R. Bankr. P. 9009 (forms shall be construed to be consistent with the Code).

In support of his objection, the Trustee relies heavily on *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61 (2011). In *Ransom*, the Supreme Court analyzed §707(b)(2)(A)(ii) in the context of the IRS's Local Standards for Transportation. Focusing on the use of the term "applicable," which it defined as "appropriate, relevant, suitable, or fit," the Court held that the deduction for transportation ownership costs only applies to individuals who have the costs of a car loan or lease. *Id.* at 69-71. Significantly, the Court noted that the IRS's Local Standards for Transportation "explicitly recognize [a] distinction between ownership and operating costs, making clear that individuals who have a car but make no loan or lease payments may claim only the operating allowance." *Id.* at 72. According to the IRS website, individuals who own a car are entitled to the full amount of the

-11-

Local Standard for operating costs. IRS COLLECTION FINANCIAL STANDARDS, http://www.irs.gov/Individuals/Collection-Financial-Standards (last visited Sept. 15, 2015). Individuals who own a vehicle are also generally entitled to actual ownership costs up to the amount of the Local Standard. *Id.* But the IRS website makes clear that if an individual has a vehicle, but makes no payments thereon, then such individual is not entitled to take any amount for ownership costs under the Local Standards for Transportation. *Id.* And the IRS Collection Financial Standards specifically provide separate and fixed amounts for ownership and operating costs. LOCAL STANDARDS: TRANSPORTATION, http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Local-Standards-Transportation (last visited Sept. 15, 2015). Because the debtor in *Ransom* owned a car but did not make payments on it, he was only entitled to a deduction for operating costs and not for ownership costs. *Ransom*, 562 U.S. at 72, 80.

Here, it is the IRS's Local Standards: Housing and Utilities that are at issue. And unlike the Transportation Standards, the Local Standards: Housing and Utilities are not divided into two separate categories by the IRS. Although the Trustee argues that *Ransom* is controlling in the present case, it is easily distinguished. In *Ransom*, the Court looked at the plain language of §707(b)(2)(A)(ii)(I), which references the IRS Local Standards. *Id.* at 69. Under a plain reading of the Local Standards and the Collection Financial Standards—the latter the Court viewed as explanatory guidelines to the National and Local Standards—one of the designated categories of expenses was applicable to the debtor in *Ransom* and the other was not. *Id.* at 72-73. While the Court cautioned

that the explanatory guidelines provided by the IRS are not incorporated into the Code and cannot be controlling if they are at odds with it, the Local Standards: Transportation themselves supported application of one expense and not another. *Id.* at 72-74. Applying the analysis of *Ransom* to the Local Standards: Housing and Utilities in this case creates a different result. The Local Standards: Housing and Utilities provide only one category of expenses upon which a determination of applicability need be made—if a debtor has any expenses related to "housing and utilities" then the Local Standards apply.

Despite the plain language of the §707(b)(2)(A)(ii)(I), the Trustee relies on the division of the housing-related Local Standards on old B22C and current form 22C-2 for his argument that two distinct Local Standards exist and should be applied based on the *Ransom* criteria. Both the old and new forms, however, reference the U.S. Trustee Program website which provides links to tables that give a breakdown of the portions of the Local Standards attributable to "mortgage/rent" and to "non-mortgage" expenses. And although the tables do not indicate the specific expenses included in each line-item, also available on the EOUST's website is a Statement of the U.S. Trustee Program's Position on Legal Issues Arising Under the Chapter 13 Disposable Income Test. http://www.justice.gov/ust/eo/bapcpa/docs/chapter13_analysis.pdf (last visited Sept. 15, 2015). In that document which indicates it was last revised in April 2010, the EOUST identifies the "non-mortgage" expenses included in Line 25A of the old B22C as maintenance and repair, homeowner association dues, condominium fees, various utilities, and basic telephone and cell phone service.

*Id.* And the EOUST identifies the "mortgage/rent" expenses as principal and interest on mortgage loans, rent, homeowners/renters insurance, and local property taxes.[2] *Id.* Thus, under the EOUST's breakdown, the Debtor here has expenses for insurance and property taxes which are part of the "mortgage/rent" deduction, making that portion of the Local Standards applicable even under a *Ransom* analysis.

Notwithstanding the statement on the 22C-2 form that the division of the Local Standards: Housing and Utilities was made by the UST and the direct acknowledgment in this case by the UST that the Debtor is entitled to the deductions she claims, the Trustee persists in his objection. In support of his objection, he cites several cases which, as the Debtor and the UST point out, do not actually provide authority for his position.

Several of the cases relied on by the Trustee involve the interplay between the so-called "marital adjustment" made on the income side of the disposable income or means test calculation and the applicability of either National or Local Standards on the expense side of the calculation. In determining a debtor's "current monthly income" for either calculation, amounts "paid by any entity other than the debtor on a regular basis for the household expenses of the debtor or the debtor's dependents" must be included. 11 U.S.C. §101(10A)(B). This generally

---

[2] The EOUST's position paper appears to be the only published document which includes a breakdown of the housing expenses included in each line-item. The limited availability of that information provides further support for the proposition that no formal division of the IRS Local Standard: Housing and Utilities has ever occurred. Citation to the position paper is for informational purposes only and is not an endorsement of the various legal positions taken by the EOUST throughout the document.

results in all of the income of a non-filing spouse of a debtor being included in the initial calculation with any amounts of that income not used to pay household expenses then being deducted out as a marital adjustment. *See Trimarchi*, 421 B.R. at 917-18.

In *Trimarchi*, a case not relied on by the Trustee, the court found that even though a Chapter 13 debtor was not liable on the mortgage note for the home in which she resided with her non-filing spouse, she was entitled to take the full Local Standards: Housing and Utilities deduction. *Id.* at 921. The court disallowed, however, the deduction of the mortgage payment made by the non-filing spouse as a marital adjustment on the income side of the debtor's calculation. *Id.* at 920. The court reasoned that the most accurate way to complete the disposable income calculation using the B22C form was to include the non-filing spouse's payment of the mortgage as part of the debtor's income and then to allow the full deduction for housing expenses. *Id.* Regardless of whether the debtor was liable for the mortgage payment, the court found that she benefitted from the regular payment of that debt by her spouse. *Id.* at 922.

The Trustee relies on several cases with similar facts as *Trimarchi* but which deny the full housing deduction to debtors who are not liable on the mortgages secured by the homes in which they reside. *E.g., In re Petry*, No. 12-51016, 2013 WL 1286197, at *1 (Bankr. W.D. La. Mar. 26, 2013); *In re Toxvard*, 485 B.R. 423, 438-39 (Bankr. D. Colo. 2013). In each of these cases, however, the court's analysis was strongly influenced by the marital adjustment issue, and both courts allowed a marital adjustment deduction on the income side of the calculations for

a non-filing spouse's payment of housing-related expenses. *Petry*, 2013 WL 1286197, at *1; *Toxvard*, 485 B.R. at 438-39. Thus, although the housing deduction was denied in each case, neither debtor was required to include the contribution of housing expenses by a non-filing spouse in their "current monthly income." *Petry*, 2013 WL 1286197, at *1; *Toxvard*, 485 B.R. at 438-39.

Although all of these cases involving the marital adjustment issue also discuss the Local Standards: Housing and Utilities, none provide guidance on the issues in this case. Each of the cases involves situations where the debtor's residence was, in fact, encumbered by a mortgage but the mortgage note was being paid by a non-filing spouse rather than the debtor. Such cases, regardless of the outcome, provide no guidance on the applicability of the Local Standards: Housing and Utilities in this case where there is no mortgage indebtedness and no contribution from a non-filing spouse. The cases are simply not on point with the facts and legal issues here.

Other cases cited by the Trustee also provide little authority for his position. For example, the Trustee relies on *In re Wilson*, 454 B.R. 155 (Bankr. D. Colo. 2011), for the proposition that *Ransom* should apply here and require a denial of a portion of the Local Standards: Housing and Utilities to the Debtor. And *Wilson* certainly contains language which says just that. *Id.* at 156-57. But *Wilson* comes to that conclusion by first discussing the fact that the IRS Local Standards control the decision and then by finding that "[t]he IRS Local Standards contain two housing-related 'monthly expense amounts,' one for 'mortgage/rent' expense and

one for 'non-mortgage' expenses."[3] *Id.* at 156. That is, of course, not entirely accurate. The IRS Local Standards do not now, and did not at the time *Wilson* was decided, contain two housing-related expense categories. The IRS Local Standards provide one amount for all housing costs depending on a debtor's county of residence and the number of people in the debtor's household. Because *Wilson* ignores the fact that the breakdown of the housing expenses into two line-items came from the UST and the Rules Committee, it provides no analysis of how that fact impacts the applicability of the Local Standards in the particular case. The issue before this Court was never raised in *Wilson,* and *Wilson*, therefore, provides no guidance on its resolution.

Likewise, the Trustee relies on *In re Fields*, 534 B.R. 126 (Bankr. E.D. N.C. 2015), for the proposition that all of the Debtor's expenses related to her home including both insurance and property taxes are included in the "non-mortgage" line-item. And, in fact, *Fields* says exactly that. *Id.* at 136. But as authority for that proposition, *Fields* cites to the Internal Revenue Manual ("IRM") and specifically "IRM 5.15.1.9 (Nov. 17, 2014)." *Id.* A review of that citation discloses, however, that because the IRS has only one Local Standard: Housing and Utilities, the IRM lists all housing-related expenses in the one cited provision; it does not break those expenses down into "mortgage" and "non-mortgage" expenses as *Fields* suggests that it does. To the contrary, the full sentence in the IRM, of which

---

[3] In support of this statement, the *Wilson* court cites to the forms rather than to the actual IRS Local Standards. The court apparently assumed that the forms mirrored the Local Standards, but they do not. Citation to the forms does not provide authority for what is actually included in the Local Standards.

-17-

only a portion is quoted in *Fields,* also includes mortgage and rent payments in the expenses covered by the Local Standard. IRM 5.15.1.9 http://www.irs.gov/irm/part5/irm_05-015-001.html (last visited Sept. 15, 2015). *Fields* provides no support for the Trustee's position that all of the Debtor's housing expenses are covered by the "non-mortgage" line-item.

The UST describes the Trustee's objection as "not well taken" and asserts that the objection is "contrary to the language of the Bankruptcy Code, impermissibly elevates a form over substantive law, relies on language from that form that is irrelevant to the Debtor's factual situation, and ignores the undisputed fact[s]" of the case. Specifically, the UST notes that the Trustee ignores the fact that "the Debtor actually incurs applicable expenses for property taxes and homeowners insurance - which is all that the Supreme Court has stated section 707(b)(2)(A)(ii)(I) requires." This is strong criticism of the Trustee by the UST who appoints the Trustee to his position and retains supervisory authority over the Trustee and all Chapter 13 cases. *See* 28 U.S.C. §586(a)(3)(B). The criticism is, however, warranted here.

The plain language of the Code requires over-the-median-income debtors to calculate disposable income through the use of the IRS National and Local Standards for certain expenses rather than by using actual expenses. 11 U.S.C. §§707(b)(2)(A)(ii)(I); 1325(b). Obviously, the use of fixed allowances which do not purport to bear any relationship to a particular debtor's actual expenses results in some debtors receiving deductions which exceed actual expenses and others receiving inadequate deductions to meet their needs. But in passing BAPCPA,

-18-

Congress expressed a clear intent to use the National and Local Standards and in so doing, to limit judicial discretion to decide what expenses are reasonable and necessary. *See In re Gress*, 344 B.R. 919, 922 (Bankr. W.D. Mo. 2006); *In re Barr*, 341 B.R. 181, 185 (Bankr. M.D.N.C. 2006).

There is no question that the IRS Local Standards: Housing and Utilities provide for only one housing deduction based on a debtor's county of residence and household size. The deduction includes all ownership and other housing-related expenses; it makes no distinction between ownership costs and other expenses. The division of the Local Standard: Housing and Utilities on the B22C and 22C-2 forms was made by the Rules Committee at the suggestion of and with the assistance of the EOUST to facilitate the calculations required in both Chapter 7 and Chapter 13 cases. The division was made to make sure that when a debtor has a mortgage payment deductible elsewhere on the form as secured debt, the debtor does not get to double dip. But the division also guarantees that debtors have a portion of the Local Standard available for utilities and other such expenses regardless of the size of their mortgage debt payment. No intent was ever expressed by the Secretary of the Treasury, the IRS, the EOUST, or the Rules Committee that the creation of the two line-items should result in debtors who have housing expenses being denied a significant portion of the Local Standard. As the UST points out, when a debtor has no mortgage payment, the portions of the form created to facilitate integrating the deduction of such a payment with the Local Standards is "irrelevant." The full Local Standard: Housing and Utilities is applicable to debtors who have housing expenses, and nothing in the development

of the B22C or the 22C-2 supports a contrary conclusion.

### IV. Conclusion

The Debtor, with the support of the UST, has established her entitlement to the full Local Standard: Housing and Utilities deduction in the calculation of her disposable income. Accordingly, the Trustee's objection to her Amended Plan on that basis will be overruled. Because the Trustee has raised several other minor objections, the matter will be set for further hearing.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###